UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| VALENCIA BROOKS,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>CITY OF TACOMA,<br><br>　　　　　　Defendant. | Case No. C05-5051RJB<br><br>ORDER GRANTING SUMMARY JUDGMENT |

This matter comes before the Court on Defendant's Motion for Summary Judgment on all claims. Dkt. 22. The Court has reviewed all documents filed in support of and in opposition to this Motion, has reviewed the entire file, and is fully advised.

## I.   BASIC and PROCEDURAL FACTS

Plaintiff, an African American woman, is currently employed as Police Patrol Officer for the Tacoma Police Department ("TPD"). Dkt. 1, at 2. She has been with the TPD since 1996. *Id*. Plaintiff's immediate supervisor at the time of the events in question was Sergeant Barton Hayes, and one of his supervisors was Lieutenant Robert Ruiz. Dkt. 23, Ex. 1, 140.

On January 19, 2005, Plaintiff filed the instant action, claiming that she had been subject to: A) disparate treatment because of her race and gender, in violation of Title VII of the Civil Rights Act of 1964 (Title VII), B) retaliation as a result of engaging in protected activity, and C) a violation of her rights under the Americans with Disabilities Act ("ADA"). Dkt. 1.

### A.   TITLE VII DISPARATE TREATMENT BASED ON RACE AND/OR GENDER

In the spring of 2003, Plaintiff and a white male officer, Jerry Reidburn, applied to work at an off-duty charity fund raiser. Dkt. 27, at 1. Both officers were given permission to work at the event. *Id.* The Off Duty Employment form indicated duties would include site security and a money escort. Dkt. 27 at 2. The form stated, "[i]f officers want to bring a city vehicle to the event, they must apply and receive approval to do so." *Id.* Plaintiff requested, and Lt. Ruiz denied, the use of her assigned police vehicle. Dkt. 27, at 2. Lt. Ruiz states he denied the Plaintiff's request because it appeared to him that the police vehicle was to be used for personal transportation to and from the site. Dkt. 32, at 17. According to Lt. Ruiz, unless there is a clear benefit to the City, traffic control for example, TPD policy is that officers are not permitted to take their assigned police vehicles to off duty jobs. *Id*. at 17-18.

Officer Reidburn, who was on call, arrived in his assigned police vehicle. Dkt. 27 at 2. Although Lt. Ruiz did not approve Officer Riedburn's use of his police vehicle, he indicated that TPD policy was that officers on call may drive their police vehicles at will. Dkt. 23, Ex. 2, at 33. Both officers wore their police uniforms. Dkt. 27, at 2. At the conclusion of the event, Plaintiff and Officer Riedburn decided Plaintiff would perform the "money escort," that is, she followed the event coordinator's car from Point Defiance Park to Seattle. *Id.* As a result of the "money escort," Plaintiff worked two hours more than her male counterpart, used her personal vehicle, and incurred additional gas expenses. *Id.* The record includes an email to both officers from Ross Mueller, the Special Events Coordinator, which provides for extra pay for extra hours worked. Dkt. 27, at 6.

### B.   RETALIATION

On June 12, 2003, Plaintiff filed a race and sex discrimination claim with the Tacoma Human Rights Commission ("HR Commission"). Dkt. 29, Ex. 2. On January 20, 2004, the HR Commission contacted Kim Gerhardt, Acting General Counsel for the TPD, requesting information regarding Plaintiff's pending claims. Dkt. 29, Ex. 2. In early February 2004, Plaintiff's immediate supervisor orally counseled her regarding her use of non-sick leave for sick leave. Dkt. 23, Ex. 1, at 139-147. Plaintiff's personnel file does not contain a document memorializing this oral counseling. *Id.* at 143. After the February 2004 discussion regarding sick leave banks, Plaintiff was not allowed to draw upon her other

1  leave banks for absences due to illness. *Id.* at 145. When she did not have enough hours of sick leave
2  available, Plaintiff was required to take leave without pay for such absences. *Id.*

    **C.**    **ADA VIOLATIONS**

In February 2002, TPD Det. David DeVault interviewed Plaintiff regarding a shooting incident that occurred in September 2001. Dkt. 24, at 2. Plaintiff had expressed concerns regarding the possible involvement of her ex-boyfriend, officer Corey Olsen, in the shooting. *Id.* In a written administrative report requested by Internal Affairs, Det. DeVault related that Plaintiff told him she had contracted herpes from officer Olsen. *Id.* Ex. 1, at 6. Det. DeVault expressed his personal concern that Plaintiff was "paranoid" and had an "extreme personal agenda with Corey Olson." *Id.* Det. DeVault is not a medical doctor, has no specialized training in psychology or psychiatry, and did not make a medical diagnosis when he used the word "paranoid." Dkt. 24, at 3. According to Det. DeVault, his use of the word "paranoid" was intended to carry its common, everyday meaning. *Id.* Det. DeVault's concerns were related in a supervisor's (Sgt. Michael Taylor's) administrative report, as requested by Internal Affairs. Dkt. 23 Ex. 6, at 3. Det. DeVault's and Sgt. Taylor's reports were incorporated in the TPD's internal affairs file number 02-03-008. Dkt. 27, at 3. Although the record is not clear, at least portions of Det. DeVault's report, as it pertained to Plaintiff, was included in Plaintiff's internal affairs investigation file. Dkt. 23, Ex. 1, at 89.

The internal affairs file number 02-03-0008, and Plaintiff's and other officer's internal affairs files, were then subject to a redaction review in response to a Public Disclosure Request by at least one of Plaintiff's co-workers. Dkt. 29, Ex. 7, at 6. The co-worker was a union official from Plaintiff's union. *Id.* The union official was given access to the information due to an agreement which was reached between the union and the City of Tacoma in accordance with the collective bargaining agreement. *Id.*

<u>MOTION FOR SUMMARY JUDGMENT</u>

In the present Motion, the Defendant moves for summary judgment on all Plaintiff's claims. Dkt. 22. Defendant argues Summary Judgment should be granted on the Plaintiff's (A) Title VII discrimination claim because there is no evidence that she was subjected to disparate treatment because of her race or gender, (B) retaliation claim because there is no evidence that any adverse actions were taken

ORDER
Page - 3

against Plaintiff in retaliation for protected activity, and (C) her ADA claim should be dismissed because there is no evidence that she was discriminated against because of a disability. *Id.*

Plaintiff, in her Memorandum in Opposition in Part to Motion for Summary Judgment, responds: (A) her Title VII discrimination claim should not be dismissed because there are issues of fact as to whether she and her male counterpart were similarly situated in the use of a police car, (B) her retaliation claim should not be dismissed because an adverse employment action was taken against her, and there are issues of fact as to whether a causal link exists between her complaint to the HR Commission and the counseling she received regarding sick leave, and (C) that the Defendant's failure to protect information regarding Plaintiff's health violated the ADA, and so her claim under the ADA should not be dismissed. Dkt. 26.

Defendant notes in its reply that the Plaintiff does not oppose summary judgment on some of the claims. Dkt. 31. Defendant argues that: (A) Plaintiff's Title VII claim should be dismissed because she and her male counterpart were not similarly situated in regard to the use of police vehicles, (B) Plaintiff's retaliation claim should be dismissed because she offers no evidence of an adverse employment action and there is no causal connection between the counseling and her filing a complaint, and (C) Plaintiff's ADA claim should be dismissed because she misapplies the ADA and does not show that any adverse employment action occurred. *Id.*

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also*

Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

## B. TITLE VII SEX AND RACE DISCRIMINATION CLAIM

Under Title VII, an employer may not discriminate against a person with respect to his " . . . terms, conditions, or privileges of employment" because of his "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). To establish a prima facie case of discrimination under Title VII, a plaintiff must provide evidence that gives rise to an inference of unlawful discrimination. *Texas Dept. Of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). A Title VII plaintiff alleging discriminatory treatment may prove her case through circumstantial evidence, following the burden shifting frame work in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.*

The first step of the *McDonnell Douglas* test requires the plaintiff to establish a prima facie case of discrimination. *Id.* A plaintiff must establish that "(1) he belongs to a protected class, (2) he was qualified for the position, (3) he was subjected to an adverse employment action, and (4) similarly situated non-white individuals were treated more favorably." *Aragon v. Republic Silver State Disposal, Inc.,* 292 F.3d 654, 658 (9th Cir. 2002).

In the second step of the *McDonnell Douglas* test, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Burdine*, at 253 (citing *McDonnell Douglas* at 802).

In the last step of the *McDonnell Douglas* test, "should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, at 253. "The nature of the burden that shifts to the defendant should be understood in light of the plaintiff's ultimate and intermediate burdens. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id*.

1. First Step under *McDonnell Douglas*: the Plaintiff's Prima Facia Case

The parties in this matter do not contest the first two prongs of the prima facie case under *McDonnell Douglas*: that (1) Plaintiff belongs to a protected classes, and (2) she was qualified for her position. *See* Dkts. 22, 26, and 31.

As to the third prong of the prima facie case, Plaintiff fails to establish that she was subject to an adverse employment action based on her race and/or gender when she was denied the use of her assigned police vehicle for the spring 2003 charity event. Dkt. 27, at 2. Plaintiff argues that the action was adverse because she had to work four hours instead of the two her male counterpart worked and she incurred additional gas expenses as a result of the "money escort" she performed. *Id.* Plaintiff's own evidence undermines her argument. Plaintiff attaches an email to her Affidavit from Ross Mueller, the Special Events Coordinator, which states: "If by chance, they ask someone to work extra hours that day or escort the money to Seattle, that is approved. I will probably have to invoice them for additional payment, so if that occurs, let me know how many extra hours and I'll take care of that." Dkt. 27, at 6. Plaintiff fails to establish the third prong of her prima facie case.

Under the fourth prong of the prima facie case, a plaintiff must show similarly situated individuals not in the protected class were treated more favorably. *Aragon* at 658. Defendant here properly points out that the Plaintiff and her male counterpart were not similarly situated in that the white male officer, who also worked at the charity event, was on-call. On-call officers are paid a minimum fee per hour and are authorized by the TPD's established polices and practices to use assigned police vehicles **at will**. Dkt.

23, Ex. 2, at 33. The TPD allows the use of assigned vehicles to on-call officers so that they are able to respond to a crime within 30 minutes. *Id.* at 34. In contrast, officers who are not on call are generally not authorized to take an assigned police vehicles to off duty jobs in order to provide transportation for that officer to and from the job. *Id.* at 33. TPD policy, and the instructions on the off Duty Employment form for the event, indicate that officers in Plaintiff's position (officers who are not on call), must seek and receive approval to use a city vehicle. TPD policy indicates that because he was on call, the other officer working the event did not have to ask for permission to use his police car. Plaintiff and the other officer are therefore not similarly situated individuals. Plaintiff argues that because a "money escort" was involved in the off duty job, she would not have been just using her vehicle to transport herself to and from the job, and should have been allowed under TPD policy to drive a City car. Dkt. 26, at 10. Plaintiff's argument misses the mark. Plaintiff and the other officer were not in a comparable situation. She had to ask for permission to use a city car under TPD policy, he did not. Plaintiff failed to establish the fourth prong of her prima facia case.

2.  Second Step under *McDonnell Douglas*: Defendant's Reasons

Even if Plaintiff were to have succeeded in establishing a prima facie case under the first step of the *McDonnell Douglas* test, Defendant has provided a nondiscriminatory reason for the action and thus meets it's burden under the second step of the *McDonnell Douglas* test. *See Burdine*, at 253 (citing *McDonnell Douglas* at 802). Defendant has provided evidence that TPD policy was that if an officer is on call, she is permitted to use her assigned police vehicle at will. Further, TPD policy is that if there is no clear benefit to the City, officers working off duty jobs are not permitted to take their police cars.

3.  Third Step under *McDonnell Douglas*: Plaintiff's Evidence of Pretext

Shifting the burden back to the Plaintiff under the third step of the *McDonnell Douglas* test, Plaintiff has failed to prove "by a preponderance of the evidence that the reasons offered by Defendant were not it's true reasons but were a pretext for discrimination." *Burdine*, at 253. Plaintiff argues that because the Off Duty Employment form indicated that a money escort was a part of the duty involved, her request was for more than person transportation and therefore her request to use of police vehicle was should have be granted under TPD policy. Dkt. 26, at 11. Plaintiff asserts that Defendant's stated reason is therefore not credible. *Id.* Plaintiff misses the key distinction regarding the policy: Officer Reidburn's

on call status meant that he did not have to ask for a vehicle, she did. Plaintiff fails to offer any evidence from which an inference of discriminatory motive may be made.

### 4. Conclusion

Although Plaintiff's Complaint also includes factual allegations relating to a reprimand for filing a domestic violence compliant and a derogatory reference as further basis for her Title VII claim, she does not meaningfully dispute the dismissal of those claims as supported by the facts in her Memorandum in Opposition in Part to Motion for Summary Judgment. Dkt. 26. Plaintiff's Title VII claim should be summarily dismissed in its entirety.

## C. RETALIATION CLAIM

To establish a retaliation claim under Title VII, "a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brooks v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir. 2000) (*citing Payne v. Norwest Corp.*, 113 F.3d 1079 (9th Cir.1997)). At that point, "the burden of production shifts to the employer to present legitimate reasons for the adverse employment action. Once the employer carries this burden, plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext. Only then does the case proceed beyond the summary judgment stage." *Id.*

### 1. Involvement in a Protected Activity

Neither party disputes that Plaintiff engaged in a protected activity when she filed a complaint with the HR Commission on June 12, 2003, thus establishing the first prong of the test.

### 2. Adverse Employment Action

Parties do disagree on whether the oral counseling Plaintiff received in early February 2004 regarding the use of accrued vacation leave for sick leave constituted an adverse employment action. Plaintiff alleges that Lieutenant Robert Ruiz, her supervisor, ordered she be counseled regarding her use of vacation leave when she was ill and had no remaining sick leave. Dkt. 23, Ex. 1, at 140. Plaintiff notes this counseling took place a few weeks after the HR Commission contacted the TPD's attorney about her complaint. Plaintiff was counseled by her direct line supervisor about the way in which she used her leave. *Id.* Plaintiff acknowledges that this discussion was not an oral reprimand, and that no documentation regarding this discussion was placed in her personnel file. *Id.* at 142-43. Plaintiff further

1  acknowledges that the only adverse result was that when she had no sick leave available and was ill, she
2  had to take leave without pay. *Id.* Defendant argues that it is the TPD's general policy not to allow police
3  officers to substitute vacation leave for sick leave when the employee is absent due to illness and has no
4  sick leave. Dkt. 22. Defendant points to the testimony of Lt. Ruiz, who states that he has repeatedly
5  objected to allowing employees in his department to draw on vacation leave when that employee has a zero
6  sick leave balance. Dkt. 25, at 2.

7  Tacoma Municipal Code 1.12.220 which governs the use of vacation leave for City of Tacoma
8  employees, supports TPD's policy. Tacoma Municipal Code 1.12.220 (B)(1), "Permissible Use of
9  Vacation Accruals with Pay" provides, "[v]acation leave may not be taken without the prior approval of
10 the appointing authority and may not be taken in the pay period in which it was earned. Vacation leave
11 shall be scheduled so as to meet the operating requirements of the City and, as far as practicable, the
12 preferences of the employees." Tacoma Municipal Code 1.12.220 (B)(2)(5), provides "[f]or a period of
13 illness or disability, employees who at their option, elect to use vacation leave shall remain on vacation
14 leave until exhausting such leave, returning to work, or being placed on leave without pay." Read
15 together, Tacoma Municipal Code 1.12.220 (B)(1) and 1.12.220(B)(2)(5), requires employees seek
16 permission of their department when they elect to use vacation leave when ill.

17 Plaintiff fails to offer any evidence that she was treated differently than other employee, and as a
18 result, the Defendant's actions can not be deemed to be an adverse employment action. *Brooks* at 929
19 (finding that absent a showing of disparate treatment, a City's requirement that a plaintiff and other
20 employees participate in training did not constitute an adverse employment action). Counseling Plaintiff
21 regarding TPD leave policy, and requiring that she follow it, is a trivial employment action which would
22 not "deter reasonable employees from complaining about Title VII violations." *See Ray v. Henderson*, 217
23 F.3d 1234, 1243 (9th Cir.2000) ([a]n action is an adverse employment action if it is reasonably likely to
24 deter employees from engaging in protected activity.).

25         3.    <u>Causal Connection between Protected Activity and Adverse Action</u>

26 Plaintiff fails to offer evidence of a causal connection between the protected activity and the
27 adverse employment action. Plaintiff argues that even though there was a seven month gap between the
28 filing of her complaint with the HR Commission and the counseling session, the HR Commission

ORDER
Page - 9

contacted the TPD a few weeks prior to the counseling session seeking information on her claim. Dkt. 26, at 13.

Considering all the circumstances of this case, where no adverse employment action was taken, the timing of the HR Commission's inquiry is insignificant. See *Coszalter v. City of Salem,* 320 F.3d 968, 970 (9th Cir. 2003)("[w]hether an adverse employment action is intended to be retaliatory is a question of fact that must be decided in the light of the timing and the surrounding circumstances . . . the length of time, considered without regard to its factual setting, is not enough by itself to justify a grant of summary judgment" ).

### 4. Conclusion

Plaintiff fails to produce material facts which are in dispute as to her retaliation claim. Plaintiff's retaliation claim should be summarily dismissed.

**D.  ADA CLAIM**

Plaintiff's Complaint provides two factual grounds for her ADA discrimination claim. Dkt. 1, at 4. The first is discrimination based on a perceived disability, and the second is based on the improper handling of her medical information. *Id.* Plaintiff's Memorandum in Opposition in Part to Motion for Summary Judgment does not dispute dismissal of her ADA claim based upon a perceived disability. Dkt. 26. She does argue that her rights under 42 U.S.C. § 12112(d)(3)(C) were violated.

The ADA, the subsection entitled "Examination and inquiry," provides:

(A) Prohibited examinations and inquiries
A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.
(B) Acceptable examinations and inquiries
A covered entity may conduct voluntary medical examinations, including voluntary medical histories, which are part of an employee health program available to employees at that work site. A covered entity may make inquiries into the ability of an employee to perform job-related functions.
(C) Requirement
Information obtained under subparagraph (B) regarding the medical condition or history of any employee are subject to the requirements of subparagraphs (B) and (C) of paragraph (3).

42 U.S.C. § 12112(d)(4). Subparagraph (d)(3)(C) provides that information obtained concerning the medical condition or history of an employee "is collected and maintained on separate forms and in

ORDER
Page - 10

separate medical files and is treated as a confidential medical record," except that in certain circumstances, the information may be provided to supervisors, managers, safety personnel and government officials.

Plaintiff asserts the concerns expressed by Det. DeVault and re-reported by Sgt. Taylor, that she was "paranoid," and had an "extreme personal agenda with Corey Olson," relate to her mental health and were improperly included in the internal affairs investigation file 02-03-008 and her own internal affairs file. Dkt. 26, at 14. However, Plaintiff fails to effectively respond to the evidence offered by Defendant: Det. DeVault's contention that he was not making a medical diagnosis, and was using the term "paranoid" in the everyday sense of the word. The ADA does not define "medical condition or history", but in utilizing their everyday meaning, inclusion of these personal opinions regarding Plaintiff do not constitute a "medical condition or history."

Plaintiff further argues that the inclusion in Det. DeVault's report, that she stated she thought she had contracted herpes from Corey Olson, related to her physical health, and was improperly included in these files. Dkt. 26, at 14. Plaintiff further complains that the union member, who was allowed to look at her personnel file, should not have been permitted to participate in the redaction of her file because of the of the above medical information. *Id.* at 15.

Plaintiff cites to no authority that indicates that any mention of a medical condition, in any form, may not be included in personnel files or other investigative reports under the ADA. This provision of the ADA controls when medical examinations and inquires are permissible, and how the information gathered as a result of those examinations and inquires to be are handled. Here, there was no medical examination, no medical inquiry, no medical diagnosis, or even a voluntary medical history. Plaintiff offers no evidence to the contrary. The ADA does not apply. Plaintiff's claim under the ADA should be summarily dismissed.

/
/
/
/
/

ORDER
Page - 11

### III. ORDER

Therefore, it is hereby,

**ORDERED** that the Defendant's Motion for Summary Judgment on all Claims (Dkt. 22) is **GRANTED** and this case is **DISMISSED** with prejudice.

The Clerk of the Court is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 17th day of January, 2006.

 Robert J. Bryan
 United States District Judge